ALLEN *v.* FIRST NATIONAL BANK OF BATESVILLE.

5-1751 & 5-1772                    321 S. W. 2d 750

Opinion delivered March 9, 1959.

*E. M. Arnold,* for appellant.

*W. J. Arnold* and *Fred M. Pickens, Jr.,* for appellee.

*E. M. Arnold,* for appellant.

*W. J. Arnold* and *Fred M. Pickens, Jr.,* for appellee.

PAUL WARD, Associate Justice. This litigation revolves around reciprocal wills executed by Mr. and Mrs. C. M. Edwards in 1950 and a will executed by Mr. Edwards in 1955. Mrs. Edwards died in 1952 and Mr. Edwards died in 1957. The parties interested in this appeal are: The Hazel Edwards Memorial Methodist Church at Newark, hereafter called the church; The First National Bank of Batesville which was designated by the 1955 will as the Executor and also the Trustee, hereafter called the bank, and; The collateral heirs of C. M. Edwards, hereafter called the heirs.

In view of the fact that there was no testimony taken in the lower courts, that there has been no trial on the merits so far, and that this appeal comes to us on the pleadings and the rulings thereon, we feel it will be necessary to summarize only such portions of the record as will clarify the issues involved and our disposition thereof.

Mr. and Mrs. C. M. Edwards lived in Newark most of their lives and each acquired extensive holdings in

both real and personal property. Their only child was a daughter, Hazel, who died in 1922 in her adulthood. Mr. and Mrs. Edwards belonged to the Methodist Church at Newark. Apparently they were unusually attached to Hazel and it is sure they desired to perpetuate her memory. Soon after her death they constructed an elaborate church building for the Methodist Church in Newark which was and still is known as the Hazel Edwards Memorial Methodist Church.

In 1950 Mr. and Mrs. Edwards each executed reciprocal wills. By Mrs. Edwards' will she left all her personal property to Mr. Edwards, and she left all her real property to the church, subject to a life estate in Mr. Edwards. Her will is not involved in this litigation except as hereafter mentioned. The 1950 wills of Mr. Edwards and Mrs. Edwards were alike except for their names.

In 1955 Mr. Edwards executed another will purporting to revoke previous wills, the pertinent parts of which we copy below:

"Article One: I hereby appoint and name the First National Bank, Batesville, Arkansas, to serve as Executor of my estate, and also to serve as Trustee of my estate.

"Article Two: This paragraph is placed in this will in order that my intent may be made certain. For many years the Hazel Edwards Memorial Methodist Church, Newark, Arkansas, has been the donee of many gifts on my part, and also on the part of my deceased wife, Maude Edwards, during her lifetime. As we have no child or children surviving us we had long planned to make substantial provisions for this church, which at the present time is the only Methodist Church in the City of Newark, Arkansas. The maker of this will bears no ill will of any kind toward any of his relatives, nor toward the relatives of his deceased wife, Maude Edwards, but after due and long reflection it is my will to create the trust, set out below, to provide substantial gifts to the Hazel Edwards Memorial Methodist Church

at Newark, Arkansas, and since it now seems that my estate will be substantially in excess of Two Hundred and Fifty Thousand Dollars, it is my will to create the charitable trust that is fully outlined below, for the above mentioned Newark Church, and for other charitable causes related to the North Arkansas Conference of the Methodist Church.

"Article Three: I hereby give, devise and bequeath unto the First National Bank, Batesville, Arkansas, a bank organized under the law of United States of America, and unto its successors, if any, all of my estate of every kind, both real and personal and wheresoever may be located, absolutely and in fee simple, upon the following charitable trusts, uses, and conditions

"A. The trustee shall administer my entire estate after same has been delivered to the Trustee by the Executor.

"B. The Trustee shall hold the entire estate for the use and benefit of the Hazel Edwards Memorial Methodist Church, Newark, Arkansas.

"C. The Trustee shall pay to said Hazel Edwards Memorial Methodist Church each year an amount sufficiently large to pay for (1) the Pastor's salary, (2) the maintenance and upkeep of the church and the parsonage of said church, and (3) any other payments to the said Church that the Trustee in its discretion thinks proper. The Trustee shall in the administration of this part of the charitable trust consult with the presiding Bishop of the North Arkansas Conference of South Central Jurisdiction of the Methodist Church to the end that the gifts that are made to the Church will be in conformity to the program of the Methodist Church. The Trustee will not be bound to comply with the suggestions made by the presiding Bishop, but may at all times use its own discretion as to the proper disbursement of the funds. The Trustee shall have broad powers under this trust and can make disbursements for and in the name of the Newark Church to be used for purposes, programs and projects of The Methodist Church

throughout the entire North Arkansas Conference. The Trustee shall have the power to use 'net income' only in making the above gifts, and no gifts can be made from *corpus* except upon permission of the Chancery Court . . .''

In Article Four it is provided, among other things, that in the event the church ceased to exist, the ''beneficiary under this trust would be the Board of Trustees of the North Arkansas Conference, or such corporation as might be formed under the direction of the Board of Trustees of the North Arkansas Conference of the Methodist church.''

Article Five provides in great detail for the powers and duties of the Trustee named in the will, and the next article provides for the powers and duties of the executor named in the will.

Litigation was instituted in the Probate Court and also the Chancery Court, and we are here dealing with appeals from both courts, the cases having been consolidated for briefing and oral argument only.

### Probate Court Case No. 1772

The 1955 will of Mr. Edwards was filed for probate on March 14, 1957, and on the same day the order of admittance was entered. On September the 17th, 1957, the collateral heirs of C. M. Edwards filed a complaint in the Probate Court against the bank, the church, and others setting out their claim, as heirs to the estate. The complaint, after setting out the name, relation, and interest of each heir, and after referring to the two 1950 wills and the 1955 will and their contents, in substance sets forth two separate grounds for relief. Very briefly stated, these two grounds, in substance, are: (a) C. M. Edwards was incompetent to make all and any of the said wills, and (b) the two 1950 wills executed by Mr. and Mrs. Edwards constituted a contract to convey all their property to the church, that the church had elected to accept only a small portion of the estate of C. M. Edwards, that C. M. Edwards thereby died intestate as to

the major portion of his estate, and that therefore said portion descended to his heirs.

On December 31, 1957, the defendants filed a motion to require the plaintiffs to elect the cause of action upon which they would rely, stating, in effect, that the plea of incompetency of C. M. Edwards when he executed the will in 1950 was inconsistent with the plea that he made a contract at the same time.

The Probate Judge on January 13, 1955, sustained the above motion and required the plaintiffs to elect which of the two causes of action upon which they desired to proceed. We think this was error.

The court placed too great a burden on the plaintiffs. It was impossible, or at least exceedingly difficult, for the plaintiffs to know at that time whether C. M. Edwards was competent or incompetent to make the wills in question. In fact they would never know for a certainty until the issue was decided in court. The two causes of action were pleaded, we think, alternatively as shown by the complaint and the prayer. In the complaint it is stated: ''Plaintiffs further state that if the court finds C. M. Edwards to have been competent to make said wills as aforesaid in 1950 and in 1955 that it determine their rights'' under the theory that the two 1950 wills constituted a contract. In the prayer to the complaint appears this language: ''that if this court finds the wills executed by the deceased on or about May 27, 1950, and on or about December 30, 1955, valid that it determine  . . .'' their rights, etc.

In regard to the doctrine of election in equity cases, we like the rule as stated in 30 C. J. S. Section 205 under the subtitle ''Double Aspect.'' There, among other things, it is stated: ''Under proper circumstances a bill in equity may be so framed as to ask for alternative relief, even if the two theories are inconsistent with each other, provided the facts alleged show plaintiff to be entitled to the relief sought by whichever aspect of the case the court finds is sustained by proof.'' We think the ''proper circumstances'' were present in this case.

The same parties were involved, the same kind of relief sought, and the issues were properly pleaded and prayed for in the alternative. In *Henderson, et al.* v. *Harness,* 184 Ill. 520, 56 N. E. 786, the question of election was considered where pleas were inconsistent, and the court said: "A bill in chancery may be framed with a double aspect and the prayer thereof be in the alternative— that if the chancellor shall decide against the complaint in one view, it shall grant him the relief in another." Ark. Stats. Section 62-2004 (e) provides that procedure in Probate Court shall be the same as in courts of equity. The matter of election between two inconsistent remedies was considered in *Wright* v. *Burhart,* 35 Ariz. 246, 276 P. 837. It was urged "that the complaint does not show whether the action is upon *quantum meruit* or express contract . . ." The court, in refusing to require an election, stated that it would not be right nor equitable for plaintiff to lose his claim for failure of proof, and that he must be allowed to plead it in different ways and not be subjected to the hazard of being "compelled to elect upon which class of evidence he must rely."

In reaching the conclusion that appellants (the plaintiffs) should not have been required to elect, we are not overlooking the authorities presented by the appellees, and we recognize that the dividing line between when an election should be required and when it should not be required is not always clear and distinct, as is the case here. However, we feel that in equity matters any doubt should be resolved in favor of the pleader to the end that there may be a decision on the merits rather than on the pleadings and thereby avoid a possible miscarriage of justice. That view is in line with the authorities cited above and is not contrary to any of the decisions of this court on that exact point.

On March 21, 1958, the defendants entered a demurrer to appellants' other cause of action, and the same was sustained by the court and the complaint was dismissed. There are two reasons why we do not discuss that action of the court at this time. First, this cause, involving a contract for the conveyance of property, should

be tried in a court of Chancery; and, secondly, the same question was considered and passed on in Chancery Case No. 1751 which is also before us on appeal and it will presently be discussed.

In view of what we have heretofore stated, the order of the Probate Judge requiring appellants to elect is reversed and the cause is remanded for further proceedings in the Probate Court consistent with this opinion.

### Chancery Court Case No. 1751

On or shortly after September 17, 1957, the church filed a complaint in chancery court against the bank in which, in substance, the following allegations were made: (a) The bank is the executor of the last will of C. M. Edwards executed on December 30, 1955, which was admitted to probate on or about March 20, 1957; (b) The church is the beneficiary of a trust created by said will, (setting out the pertinent portions thereof); (c) Without waiving their rights under the 1955 will, they state that Mr. and Mrs. Edwards in 1950 executed the joint and mutual wills already mentioned (copies being attached); (d) Mrs. Edwards died testate on August 28, 1953, and her will has been probated; (e) The two 1950 wills constituted a contract whereby all the real and personal property belongs to the church; (f) The church desires to take under the 1955 will, but in event any court of competent jurisdiction should set aside the probate of the 1955 will, then they were entitled to a performance of the said 1950 contract. The prayer was in accordance with the above allegations.

We point out here, as is conceded, that if the church takes under the 1955 will it will get only a small portion of C. M. Edwards' estate, and that the North Arkansas Conference of the Methodist Church would receive the balance under the terms of said will.

On or about December 30, 1957, the collateral heirs of C. M. Edwards filed an intervention in the above mentioned cause of action, setting out, in substance, the fol-

lowing: (a) C. M. Edwards died on or about March 6, 1957, leaving only collateral heirs who are these intervenors; (b) Since Mr. and Mrs. Edwards executed mutual wills in 1950 which constituted a contract binding Mr. Edwards to convey all his property to the church he was "thereafter estopped from making any future or additional wills attempting to dispose of any of his said property," that the 1955 will was ineffective, and that no one, including the trustee bank, is entitled to receive or hold any of the property of C. M. Edwards; (c) The church, with full knowledge of their rights under the 1950 contract, elected to and did waive their rights to receive a major portion of C. M. Edwards' estate, and that he died intestate as to the property not accepted by the church, and; (d) The church has waived its right to the estate under the 1955 will except the small portion provided for it in Article Three, and that all other provisions of said will are void and contrary to the 1950 contract. The prayer was in accord with the above allegations.

On February 12, 1958, the church filed a Motion to Dismiss the above intervention, stating: (a) Deny the heirs have any interest in the pending litigation; (b) The heirs, by filing their complaint in the Probate Court (heretofore set out), have elected to proceed in that court and so cannot proceed in this action; and; (c) The heirs' claim herein is barred by the statute of nonclaims, since it was not filed either with the executor of C. M. Edwards' estate or in the Probate Court within the time allowed by said statute. Attached to the motion as an exhibit was the complaint filed by the heirs in Probate Court which was discussed in the first case.

Over the objections of the heirs the court granted the Motion to Dismiss, giving as one of its reasons, as set out in a previous finding, that "The intervenors here were not privy in any way to a contract entered into by the testator, C. M. Edwards, and his late wife, Maude Edwards: and I think their intervention does not state a cause of action . . ." From the dismissal of their intervention appellants have appealed.

From our analysis of the pleadings and the applicable law presented to us in the very able briefs and oral arguments by both sides, together with the authorities disclosed by our own research, we conclude that the trial court was correct in dismissing the intervention. Before setting forth our reasons for the above conclusion we point out that the outcome of a hearing in the Probate Court over the competency of C. M. Edwards to execute the 1950 and the 1955 wills might render this controversy moot. So, much of what we say hereafter must be considered in the light of the above noted eventuality.

We are unable to see how the heirs can recover on any theory advanced in this case unless and until they first establish that both the 1950 and 1955 wills of C. M. Edwards are void.

If it should finally be decided that the 1950 wills constituted a contract (giving all property to the church) and that the church has elected to take only a small portion of the estate of C. M. Edwards, it is the heirs' contention that then C. M. Edwards died intestate as to the unclaimed portion and that it would go to them by the laws of descent and distribution. This contention or theory on the part of the heirs is based on the assumption that the 1955 will was void and inoperative because Edwards had already contracted in 1950 to convey all his property to the church and because he was estopped by the 1950 wills to make the 1955 will.

Putting it another way, appellants (the heirs) say the 1950 will of Mr. Edwards (being a contract to convey his property to the church) cannot be revoked by the 1955 will. We think appellants are in error in the above line of reasoning.

There is no such thing as an irrevocable will. Ark. Stats. § 60-406 provides that a will can be revoked by another will and only so with exceptions which do not apply here. The rule in this connection is well stated in 43 A. L. R. at page 1024 in this language:

"The statement is sometimes made that mutual wills executed in accordance with a contract are irrevocable,

but this is true only to the extent that the provisions of such wills will be enforced by a court of equity. The general rule is that such wills are revocable as testamentary dispositions at any time although equity will enforce their provisions in certain cases in compelling specific performance of the contract. Therefore, a later will revoking a mutual one is admissible to probate though the testator violated his contract by executing it, and a reciprocal will which has been revoked, is not admissible though it may be enforced in equity."

In support of the above, numerous cases are cited from many states. In dealing with the contractual feature of mutual wills, Bertal Sparks in his book, Contracts to Make Wills, at pages 112-113, has this to say:

"If the contract is thought of as a contract to pass property at death and the will thought of as a vehicle for passing the property much of the confusion and apparent conflict would disappear. The contract, not the will, gives the Promisee a right to the property and when litigation arises it is the contract that must always be established. Once the contractual right is established the interest of the Promisee is protected whether or not a will has been executed. When the will has been executed, but subsequently revoked, it merely confuses the issue to talk of enforcing the will or holding that the will was irrevocable in equity. The will is not enforced and *there is no such thing as a will that is irrevocable in equity or anywhere else.*" (Emphasis supplied.)

The same rule is expressed another way in Page on Wills (Lifetime Edition) Vol. 4, Section 1709, ". . . revocability"

". . . revocability is an essential element of a will and it is said that an irrevocable instrument cannot be a will whatever else it might be. Accordingly, it is held by the great weight of authority that a will which is made in performance of a contract to make a will is, as far as probate tribunals are concerned, as revocable as any other will.

"So a joint, mutual or reciprocal will which is made in performance of a contract to make a will is revocable even though there is a covenant not to revoke or the will contains a declaration that it is irrevocable, it may be revoked like any other will."

The same result as would have followed from an application of the above announced principles was reached in the case of *Janes, Ex.* v. *Rogers,* 224 Ark. 116, 271 S. W. 2d 930. There husband and wife executed mutual wills and later, after the death of the husband, the wife executed another will. The Probate Court ordered the mutual wills to be admitted to Probate but on appeal we said that was the wrong remedy, and the proper remedy was a suit in equity to enforce the contract.

The wisdom and practical application of the views above expressed are clearly demonstrated by a simple example. Suppose that C. M. Edwards in 1950 had contracted (and provided in his will) to give the church his home instead of all his property, would anyone question his right and power to make another will in 1955 leaving all his property, including his home, to John Doe. The answer is obvious that the 1955 will would be valid and could be probated. It is beside the point to say a conveyance of the home could be enforced in a proper action.

In accord with what we have heretofore said, it must follow that even though the 1950 wills (or the wills together with any evidence that might be offered) constituted a contract and even though the church has elected to take the smaller portion, the major portion of C. M. Edwards' estate was disposed of by his 1955 will. Under the 1955 will, of course, the heirs took nothing.

*Regarding the contract.* As of the present it appears that no contract has been established. In the *Janes, Ex.* case, *supra,* this court said: "The fact that the parties have concurrently executed separate wills, reciprocal in terms, is not sufficient, of itself, to show that the parties had entered into a contract to make such wills: but the terms of such wills afford some evidence

of the contractual relation and, when read in connection with other evidence which tends to show the execution of the contract, may establish that fact.'' The difficulty facing appellants is that they are in no position to either enforce or attack the contract since they have no interest in it. Ark. Stats. Section 27-801, provides that ''every action must be prosecuted in the name of the real party in interest'' with certain exceptions which do not apply in this case. The heirs were not a party to the 1950 contract, and, unless and until it is shown that C. M. Edwards was incompetent to make a will, they have no interest in his estate.

We emphasize that if the heirs prevail in Probate Case No. 1772 and establish the incompetency of C. M. Edwards to make the 1950 will and the 1955 will they will not be precluded by our disposition of Case No. 1751 from enforcing their rights to the C. M. Edwards' estate in any court of competent jurisdiction.

In accordance with the above the order of the Probate Court in Case No. 1772 is reversed and the order of the Chancery Court in Case No. 1751 is affirmed subject to the preceding paragraph.

HARRIS, C. J., and HOLT, J., would affirm both cases.