EDWARDS *v.* AUSTIN.

5-1856                                    324 S. W. 2d 507

Opinion delivered June 1, 1959.

*Talley & Owen* by *Wayne W. Owen,* for appellant.

*Murphy & Arnold* and *Fred M. Pickens, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal is another phase of litigation arising as a result of reciprocal wills executed by Mr. and Mrs. C. M. Edwards in 1950, and a subsequent will executed by Mr. Edwards in 1955.[1]

Mr. and Mrs. Edwards lived in Newark, and acquired extensive holdings in both real and personal property. They were the parents of one child, a daughter, Hazel, who died in 1922. Soon after her death, Mr. and Mrs. Edwards, who were members of the Methodist Church at Newark, caused to be constructed an elaborate church building in Newark, which was, and is still, known as the Hazel Edwards Memorial Methodist Church. In 1950, Edwards and his wife each executed reciprocal wills. Each will left all personal property to the other, and left

---

[1] See *Allen* v. *First National Bank of Batesville*, 230 Ark. 201, 321 S. W. 2d 750.

all real property to the church, subject to a life estate in the surviving spouse. Mrs. Edwards died on August 8, 1953. In 1955, Mr. Edwards executed another will, purporting to revoke previous wills, naming the First National Bank of Batesville as executor and trustee of his estate, and creating a trust for charitable causes, including substantial gifts to the Hazel Edwards Memorial Church. Subsection *C* of Article 3 in the will provides that the trustee shall pay to such church each year "an amount sufficiently large to pay for (1) the Pastor's salary, (2) the maintenance and upkeep of the church and the parsonage of said church, and (3) any other payments to the said Church that the Trustee in its discretion thinks proper. * * * The Trustee shall have broad powers under this trust and can make disbursements for an in the name of the Newark Church to be used for purposes, programs and projects of the Methodist Church throughout the entire North Arkansas Conference."

C. M. Edwards died March 6, 1957, and the 1955 will was admitted to Probate. On September 11, 1957, a special session of the quarterly[2] conference of the Hazel Edwards Memorial Methodist Church was held, at which time three attorneys and the vice-president of the executor bank explained the two wills executed by Edwards. The church employed attorneys to represent it in connection with litigation over the wills.[3] A resolution was then adopted, as follows:

## *"Resolution*

Be it resolved the Special Session of the Hazel Edwards Memorial Methodist Church Quarterly Conference approve and confirm the action taken by the Official Board of this church on the 29th day of August, 1957,[4] as reflected in the minutes of the Official Board, and

---

[2] According to paragraph 138 of the Discipline of the Methodist Church (which paragraph is a part of the record in this case), the quarterly conference of a Methodist Church is, in the main, composed of the pastor, the stewards, the trustees, and representatives of selected groups of the church, and is presided over by the District Superintendent.

[3] See *Allen* v. *First National Bank of Batesville, supra.*

[4] This refers to the action of the Board in deciding to take under the 1955 will.

that the following express statements, resolutions, authorizations and directions be made and given:

(1)  That the Hazel Edwards Memorial Methodist Church reaffirm its belief in the fact that C. M. Edwards was at all times a person of sound mind, and fully competent to dispose of his estate in any manner that he saw fit to do so.

(2)  That this church reaffirm its faith and confidence in the First National Bank, Batesville, Arkansas, as Executor of the Estate of C. M. Edwards, deceased, and that this church express its willingness and desire to cooperate with the Executor in the administration of the estate and that a firm stand be made against any and all attacks on the will of C. M. Edwards.

(3)  That solely as a protective measure and out of an abundance of caution without waiving any rights of any kind and in view of the fact that some of the heirs of C. M. Edwards have filed an action against this church it is thought best to authorize counsel for this church to file any action the counsel deems proper to protect the church's interest in preserving the rights of this church under the will now admitted to probate or under the will of C. M. Edwards, dated May 27, 1950, or under any contract involving the estate of C. M. Edwards.

(4)  And, that this church authorize W. J. Arnold and Fred M. Pickens to represent said church in the litigation now pending and any other litigation that may develop in this matter.

Be it further resolved, that we adopt this resolution with a firm resolve to keep faith with our departed loved one, C. M. Edwards, and to walk faithfully before Almighty God.

> (s)  Paul M. Bumpers, Batesville
> District Superintendent''

Thereafter, the trustees of the Newark church filed a complaint in the chancery court against the executor, apparently designed to protect the interest of the church in case the 1955 will should be held invalid.  This complaint re-

cited that the trustees desired to take under the 1955 will, "but in the event that the District Court of the United States, Eastern District of Arkansas, Northern Division, the Probate Court of Independence County, Arkansas, or any other court of competent jurisdiction would set aside the probate of the last will and testament dated December 30, 1955, then your plaintiffs are entitled to a specific performance of the contract made and entered into by and between Maude R. Edwards and C. M. Edwards, deceased, on May 27, 1950, for the benefit of these plaintiffs." The prayer was that in the event the 1955 will should be declared invalid, the bank be ordered to immediately deliver to the probate court, for immediate probate, the 1950 will of Mr. Edwards.

Previously, on September 4, 1957, appellant and other relatives of Edwards had filed an action in the U. S. District Court (Eastern District of Arkansas, Northern Division), against the excutor (bank), Trustees of the Hazel Edwards Memorial Methodist Church of Newark, Paul Bumpers, District Superintendent of the Batesville District of the Methodist Church, and Paul E. Martin, Bishop of the Northern Arkansas Conference of the South Central Jurisdiction of the Methodist Church, alleging, *inter alia,* that Edwards was incompetent to make either of the wills, and that both should be declared invalid. By a subsequent amendment to the complaint, plaintiffs sought recovery on the theory that the reciprocal wills constituted a contract, it being alleged that the 1950 will was valid, but that the trustees of the Hazel Edwards Memorial Methodist Church were "guilty of laches and are estopped by acceptance of benefits and by their official resolution as aforesaid to claim any portion of said estate of C. M. Edwards except such portion as may be necessary to provide the income required to pay the salary of the pastor of said Church and to repair and maintain the church building and parsonage;  *  *  *."

On May 5, 1958, Wilse A. Edwards, appellant[5] herein, dismissed his action in the Federal Court without prejudice, and on May 23, 1958, filed the complaint involved in this appeal against the trustees of the Hazel Edwards Memorial Methodist Church and the First National Bank of Batesville. The complaint alleged that appellant was a qualified and acting member of the said church; that under the 1950 will of Edwards, the Hazel Edwards Memorial Methodist Church was to have received the entire estate of both Edwards and his wife (because she had predeceased him), while under the 1955 will, this church would only receive an amount sufficiently large to pay the pastor's salary and the maintenance and upkeep of the church and parsonage; that the trustees were aware of these facts and should have instituted an action to enforce the terms of the 1950 will, rather than agreeing to accept the amounts due under the 1955 will; that "the failure and refusal of the aforementioned defendant trustees, of the Hazel Edwards Memorial Methodist Church, to attempt to gather unto themselves as representatives of said church the said estate, amounts to a malfeasance of office, neglect of duty, and verges on collusion with the defendant bank. * * *" Further, "that the unequivocal action taken by the defendants herein, trustees, in electing to renounce the said 1950 will and thereby set over unto the defendant herein all of the assets of the said C. M. Edwards' estate, has rendered futile any attempt this plaintiff and the members of the said church similarly situated might make in demanding that said trustees attempt to enforce the terms of the said 1950 will of the said C. M. Edwards thereby authorizing this action, which your plaintiff, Wilse A. Edwards, brings in his own behalf as a member of said Hazel Edwards Memorial Methodist Church of Newark, Arkansas, and on behalf of all of the members of said church similarly situated. * * *" The complaint concluded with the prayer that the bank be required to immediately account to the trustees for all property which has come

---

[5] While this suit is styled *Edwards, et al.* v. *Austin, et al.*, it being alleged that the suit was brought in behalf of others similarly situated, Edwards admittedly (answer to Interrogatory No. 6) had no specific authority to represent any other person; thus the use of the term "appellant".

into its possession as executor, and that the bank be required to surrender to the trustees the assets of the estate.

Appellees herein propounded certain interrogatories to appellant, and filed a Request for Admissions,[6] following which a motion was filed to dismiss the complaint, succinctly stated, because appellant was not a trustee of the Hazel Edwards Memorial Church; had not alleged that the quarterly conference of such church authorized the filing of the suit; appellant was not a proper party plaintiff, and was without legal capacity to sue.[7] The court dismissed the complaint, and from such decree, comes this appeal.

The basic question in this litigation is simply "Does Methodist Church Law give to the individual member of the church a right to instigate suit in a civil court on behalf of the church, when the member is neither a trustee nor officer, and when the quarterly conference has taken a position contrary to the position advocated by the individual member?" Before answering this question, perhaps it is well to briefly discuss the force and effect given church law by the civil courts. A landmark case is that of *Watson* v. *Jones,* 13 Wall 679, 20 L. Ed. 666, decided by the Supreme Court of the United States on April 15, 1872. There, the Court laid down a general principle, which has been followed by our courts throughout the land.

"In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the

---

[6] No response was made to the requested admissions; the facts in the Request are therefore deemed admitted. See *White River Limestone Products Co., Inc., et al.* v. *Missouri-Pacific Co.,* 228 Ark. 697, 310 S. W. 2d 3.

[7] Other allegations were contained in the motion, which we do not reach in this appeal.

expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent, and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.

Nor do we see that justice would be likely to be promoted by submitting those decisions to review in the ordinary judicial tribunals. Each of these large and influential bodies (to mention no others, let reference be had to the Protestant Episcopal, the Methodist Episcopal, and the Presbyterian church) has a body of constitutional and ecclesiastical law of its own, to be found in their written organic laws, their books of discipline, in their collections of precedents, in their usage and customs which as to each constitute a system of ecclesiastical law and religious faith that tasks the ablest minds to become familiar with. It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men in each are in reference to their own. It would therefore be an appeal from the more learned tribunal in the law which should decide the case, to one which is less so. *   *   *"

It cannot be successfully argued that the case before us involves, not an ecclesiastical question, but a civil question only, for it has been held that ecclesiastical questions not only apply to doctrine, dogma, and creed, but likewise to church polity and church property; in fact, a property right was involved in the *Watson* case. See also *Brundage* v. *Deardorf*, 92 Fed. Reporter 214. Our own Court has likewise followed this principle many times, holding that when questions arise concerning mat-

ters of church discipline which have been decided by a church court vested with jurisdiction by church laws, the civil courts accept as final and conclusive the decisions of the ecclesiastical body. See *Sanders* v. *Baggerly,* 96 Ark. 117, 131 S. W. 49, in which case, Chief Justice Mc-CULLOCH, speaking for this Court, quoted extensively from *Watson* v. *Jones, supra.* See also *Ables* v. *Garner,* 220 Ark. 211, 246 S. W. 2d 732, *and cases cited therein.*

We proceed next to a discussion of the original question which involves only Methodist Church Law. Methodist Church Law is found in ''Discipline[8] of the Methodist Church (1956)''. The Discipline is rather comprehensive, and only those provisions pertaining to the cause at hand will be discussed. The general organization of the Methodist church is discussed in the case of *Turbeville* v. *Morris,* 203 S. C. 287, 26 S. E. 2d 821, wherein the Court said:

''*   *   *   we should keep in mind the fact that the Methodist Church does not have a congregational or independent form of government. It is a connectional organization with a centralized form of government, the whole church being a general unit and the local churches being parts of the larger body. The church is governed by quarterly, district, annual and general conferences in an ascending scale and the size of a faction and whether or not it is a majority of the membership of a local congregation is not at all controlling, Zollman's American Church Law, 262.''

The Quarterly Conference (herein involved) is vested with the following authority in matters relating to property:

Para. 151 provides: ''In a pastoral charge consisting of one local church, the Quarterly Conference as constituted in Sec. 138, shall be vested with authority and power in matters relative to the real and personal property of the local church concerned as set forth in Sec. 156-194.''

---

[8] Webster's New International Dictionary, 2nd Edition, defines "Discipline" as follows: "Body of laws pertaining to conduct, church government."

Para. 157 provides in part: "In a pastoral charge consisting of one local church, the Quarterly Conference, constituted as set forth in Sec. 138, shall be vested with power and authority as hereinafter set forth in connection with the property, both real and personal, of the said local church namely:

(3) To direct the Board of Trustees with respect to the acceptance or rejection of any and all conveyances, grants, gifts, donations, legacies, bequests, or devises, absolute or in trust, for the use and benefit of the local church and to require the administration of any such trust in accordance with the terms and provisions thereof and of the local laws appertaining thereto.

\* \* \*

Para. 165: "Subject to the direction of the Quarterly Conference as hereinabove provided, the Board of Trustees shall receive and administer all bequests made to the local church; shall receive and administer all trusts; shall invest all trust funds of the local church in conformity with laws of the country, state, or like political unit in which the local church is located; and shall have the supervisory oversight and care of all real property owned by the local church and of all property and equipment acquired directly by the local church."

It is therefore apparent that in the instant matter, the Quarterly Conference *had the authority to act* — the Quarterly Conference *acted.*

Our own Court has had only one case before it involving Methodist Church Law, *Rushing* v. *Thompson,* 208 Ark. 248, 185 S. W. 2d 941. A suit there instituted by Rushing, who was a member of the Rhodes Chapel Methodist Church, was dismissed, this Court pointing out that Rushing was not a trustee of the Rhodes Chapel church, and was without authority to bring the suit.

To summarize, it is clear that this Court has recognized the decisions of church courts, properly vested with jurisdiction, as final. It is equally clear, under Methodist Church Law, that appellant's contention is without merit, and he was without authority to institute the suit.

It follows that the court did not err in dismissing the complaint.

The litigation being thus disposed of, it becomes unnecessary to discuss other points urged by appellee in support of the court's findings.

It might be pointed out that though appellant complains that the trustees are not properly looking after the affairs of the church, the record reflects, as already mentioned in this Opinion, that the trustees have instituted suit in the Chancery Court seeking to protect the rights of the Newark church, irrespective of the outcome of suits instituted by some of the Edwards heirs, and which litigation is presently pending in the Courts.

The Decree of the Chancery Court is affirmed.