Garland F. MORRIS, Jr. *v.* Sophia Rose CULLIPHER, Individually as Trustee of Garland F. Morris, Jr. Trust, and Executrix of the Estate of Garland R. Morris, Sr., Deceased

89-24                                                    772 S.W.2d 313

Supreme Court of Arkansas
Opinion delivered June 19, 1989

*Young, Patton & Folson,* by: *David Folson;* and *David J. Potter,* for appellant.

*Hubbard, Patton, Peek, Haltom & Roberts,* by: *George L. McWilliams* and *Randall D. Goodwin;* and *Smilie Watkins,* for appellee.

DARRELL HICKMAN, Justice. The issue in this case is whether Garland Morris, Sr., and his wife, Sophia, made an agreement that their reciprocal wills could not be revoked. The chancellor held there was no agreement and we affirm the decree.

Garland Morris, Sr., and Sophia Cullipher were married in 1966. Mrs. Cullipher had no children, and Morris had one adult child, Garland Morris, Jr., the appellant, who is called Gene. When they married they each had separate real estate holdings. Sophia had about 350 acres of land in Miller County; Mr. Morris had 120 acres in Miller County. He had a one-half interest in 500 acres in Morris County, Texas, another 37 acre tract in Morris County and a lot in Longview, Texas. During their marriage they acquired 633 acres of land, which they held jointly, located in Miller County. When Garland Morris, Sr., died in January, 1985, there was $278,000 in certificates of deposit, which were held jointly.

Morris' 1969 will generally provided that one-half of his estate went to his wife. (His estate did not include the certificates of deposit, land held jointly, or Sophia's separate property.) The other half went to a trust with Sophia as trustee for the benefit of Morris' son, Gene. The will provided that if Sophia predeceased

Morris, the entire estate would go to Gene.

Sophia executed a will in 1969 at the same time Morris did at the law office of Reagan McLemore in Longview, Texas. Her will provided that all her property would go to Mr. Morris; but, if he predeceased her, her property would go to Gene.

Sophia testified that this will was destroyed several days after its execution by Mr. Morris when they had an argument over her will. She executed a second will three months later, leaving nothing to Gene. It was stipulated that her third will, which was executed after Mr. Morris' death, made no provision for Gene.

██ Gene filed suit claiming that his father and Sophia had a contract not to revoke their 1969 wills. A contract not to revoke a will must be proved by clear, cogent and convincing evidence. *Barksdale* v. *Carr*, 235 Ark. 578, 361 S.W.2d 550 (1962). In this case, the chancellor found that burden had not been met. We will not reverse a chancellor's fact finding unless it is clearly erroneous, ARCP Rule 52(a), and on appeal, we review the evidence in the light most favorable to the appellee. *Constant* v. *Hodges*, 292 Ark. 439, 730 S.W.2d 892 (1987).

It is clear in this case that the wills contained no express reference to a contract not to revoke. Even so, such a contract may arise by implication from the circumstances of the case. *Janes* v. *Rogers*, 224 Ark. 116, 271 S.W.2d 930 (1954).[1]

The chancellor made the following findings of fact which pertain to the existence of a contract not to revoke:

1. The wills are not identical. Garland's will leaves half his property to Sophia. Sophia's will leaves all her property to Garland.

2. At the time Sophia executed her will, she did not know the contents of Garland's will.

3. At Sophia's direction, Garland destroyed her will

---

[1] For wills executed after June 17, 1981, a contract not to revoke may not be established by implication from the circumstances of a case. See Ark. Code Ann. § 28-24-101(b)(1) (1987).

shortly after its execution.

4.  Garland made a slight change in his will, which gave Gene access to the corpus of the trust at age 45 rather than age 35, without Sophia's consent.

5.  There was no agreement between Garland and Sophia that Gene would be the beneficiary of Sophia's estate.

All these findings are supported by Sophia's testimony, if her testimony is believed. She testified that she was unhappy with her first will because she did not want to leave her property to Gene. She and Garland got into an argument shortly after the wills were executed and, at her direction, Garland tore up her will and threw it in the trash. Three months later she drafted a new will, which did not leave her property to Gene.

She testified there was no agreement between her and Garland that she could not change her will. In fact, she did not know the full content of Garland's will until after he died. Her second will was kept in a safe deposit box or a safe at home to which both she and Garland had access. She also testified that Gene and his father did not get along well at times.

The appellant produced other witnesses. Rachel Williams was a secretary to the lawyer who drafted the will. She testified that Sophia looked at her will before entering the lawyer's office and exhibited no displeasure. Ms. Williams said she did not know of the reasoning behind the drafting of the wills and did not know if Garland and Sophia read each other's wills.

Two family friends testified that Sophia had said Gene would get her property if he "treated her right" or if he "kept being good." Garland's brother, Travis Morris, said Garland told him they had gotten the wills straightened out and that Sophia had left everything to Gene.

Gene testified that he never discussed the wills with Garland or Sophia. He said his father once told him that if he played his cards right, Sophia might leave her property to him. He said he and his father had a good relationship.

This testimony presented a credibility question, and it is the duty of the chancellor to weigh the credibility of the witnesses.

*Blevins* v. *Wagnon*, 281 Ark. 272, 664 S.W.2d 198 (1984).

The appellant points to the fact that the wills were executed at the same time and each made its ultimate bequest to the appellant. There was testimony from friends of the family that Sophia had said Gene would get all her property if he "treated her right" or "kept being good." A relative, Travis Morris, said that Garland told him they'd gotten their wills "straightened out" and Sophia had left everything to Gene.

The case law supports the chancellor's decision. In *Barksdale* v. *Carr, supra,* the husband and wife executed identical wills giving each a life estate in the other's property with the remainder divided equally among the children. No language in the will referred to a contract not to revoke. The evidence presented consisted of statements made by the couple that all the children would be treated equally and that they had everything fixed like they wanted it so that one of the heirs would not get more than another. The chancellor held the evidence was sufficient to establish a contract. We reversed, saying the burden of proof had not been met.

The case of *Janes* v. *Rogers, supra,* must be distinguished. The wills did not refer to a contract not to revoke. But there was testimony by the couple's attorney that there was an understanding or agreement between the couple as to the disposition of their property. We made the following statement:

> The general rule is that a contract for reciprocal wills need not be expressed, but may arise by implication from circumstances which make it clear that the parties had such wills in mind, that they intended to carry out their plans for testamentary disposition thereby, and that each acquiesced in the understanding of the other.

We agree with the chancellor that there is no clear and convincing evidence in this case that Garland and Sophia "acquiesced in the understanding" that the wills were to be reciprocal and irrevocable. The fact that the wills did not provide for equal disposition of one's property to the other, the subsequent destruction of Sophia's will with both parties' knowledge, Sophia's lack of awareness about the contents of Garland's will, Sophia's testimony that no agreement not to revoke existed, and

the fact that the appellant's evidence could only lead one to speculate whether such a contract was intended, support the chancellor's finding. Therefore, the chancellor's findings are affirmed.

 The other issue raised is one of discovery. Shortly before the trial, the appellant asked that the appellee produce her third will. The appellee did not want to because it might cause embarrassment to some of the legatees, but she agreed to stipulate that the will did not make a provision for the appellant. The trial judge refused to order the document produced. We cannot say the trial judge abused his discretion in this case. The appellant makes no argument of what would have been the benefit to his case if the will had been discovered. Since the appellant can show no prejudice from the chancellor's ruling, the ruling will be affirmed. *Marrow* v. *State Farm Ins. Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978).

Affirmed.