Betty MABRY *v.* Mary McAFEE, Executrix of the Estate
of Stella Hunt, Deceased

89-279                                           783 S.W.2d 356

Supreme Court of Arkansas
Opinion delivered February 5, 1990

*Phil Stratton and Casey Jones, Ltd.*, for appellant.

*Tatum & Sullivan, P.A.,* by: *Terry Sullivan*, for appellee.

STEELE HAYS, Justice. Appellant Betty Mabry and appellee
Mary McAfee are stepsisters. Betty Mabry's father, Darrell
Hunt, and Mary McAfee's mother, Stella, married years ago
when the girls were children.

In March 1977, Darrell and Stella Hunt executed comple-
mentary wills leaving the entire estate to the survivor with a

provision that if the other spouse predeceased, "then to my children, Betty Mabry and Mary McAfee to be divided equally." Darrell's will, dated March 10, 1977, nominated Stella to execute his will. Stella's will, dated March 8, 1977, nominated Joe Hunt, Darrell's brother, to serve as executor.

Darrell Hunt died in August of 1978 and on March 19, 1979, Stella executed a codicil to her will nominating Mary McAfee to serve as executor, declaring that "my other child, Betty Mabry, shall be excluded from receiving any of my personal property" and bequeathing all personal property to Mary McAfee.

In May 1988, Stella Hunt died and after her will and codicil were admitted to probate Betty Mabry brought this suit in chancery for specific performance of an alleged agreement between Darrell and Stella Hunt culminating in the execution of reciprocal wills which Stella Hunt had altered by codicil.

Ms. Mabry testified that her parents divorced when she was about ten, that she was raised by her mother in Little Rock, but visited her father and stepmother in Briggsville at least twice a year. She said she was present at several discussions between her father and stepmother as to their plans for disposing of their properties, that everything was to be divided between the two girls. After her father died, Stella sold the home place at Briggsville.

Joe Hunt testified about conversations with Darrell and Stella Hunt regarding their plans, that it was Darrell's desire that the property be divided between Mary and Betty, that Stella told him they had made their wills and their desire was that the property be split evenly between the girls. He said the lands conveyed to Darrell and Stella as husband and wife were ancestral lands which Darrell had inherited from the Hunt estate. Joe's wife, Mary, testified that Darrell wanted his property to be shared equally between the two girls, that Stella had talked to her a number of times about their agreement that the property would be equally divided, that she wanted it that way at her death, and that they had made wills leaving everything equally to the girls.

The wife of another of Darrell Hunt's brothers testified to frequent conversations with Stella, that Stella told her she was going to spend whatever she wanted and when she was gone it

would be divided equally between Betty and Mary, the last such conversation with Stella having been two weeks before Stella's death.

When the plaintiff rested the chancellor remarked that the proof failed to establish an agreement by clear and convincing evidence, and while there may have been an intention to divide the estate equally between the children, he had not heard sufficient evidence to establish an agreement between Darrell and Stella Hunt to honor the wishes of each other and to be bound by them. Intentions, he noted, are subject to change, contracts are not.

Ms. Mabry has appealed, urging that the chancellor erred in refusing to enforce a bilateral contract that resulted in the execution of reciprocal wills by Darrell and Stella Hunt. We are not persuaded the chancellor clearly erred and accordingly we affirm the decree.

While we review chancery cases de novo, we recognize the superior position of the chancellor to weigh issues of credibility and therefore we do not reverse unless such findings are clearly against the preponderance of the evidence. *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W.2d 465 (1979). ARCP Rule 51.

It is generally true that while an agreement to make irrevocable, reciprocal wills can be inferred from relevant circumstances, the fact that the parties have contemporaneously executed separate wills, reciprocal in terms, is not sufficient in itself to establish a binding contract to make such wills. *Barksdale* v. *Carr*, 235 Ark. 578, 361 S.W.2d 550 (1962); *James* v. *Rogers*, 224 Ark. 116, 271 S.W.2d 930 (1954). The law has traditionally demanded a relatively high standard of proof of such agreements. Evidence of that requirement can be seen in Act 568 of 1981 [Ark. Code Ann. § 28-24-101 (1987)], providing that agreements to make a will can be established only by express provision in writing or in the will itself. However, the act does not purport to affect agreements made prior to June 17, 1981, and has no application here.

Appellant concedes that the law places a heavy burden of proof upon a litigant who alleges a binding contract not to revoke or alter a will. *Morris* v. *Cullipher*, 299 Ark. 204, 772 S.W.2d 313 (1989); *Barksdale* v. *Carr, supra*; *James* v. *Rogers,*

*supra.* Even so, appellant maintains the testimony of the four witnesses noted above was sufficient to meet that burden. But we cannot say the chancellor was compelled to accept that testimony, or was clearly wrong in not finding that a binding agreement existed between the Hunts to leave their wills intact. Ms. Mabry and the witnesses called in her behalf were all related by blood or marriage and their testimony did not have that degree of disinterest which would render it obligatory on the fact finder. *Gilbert* v. *Diversified Graphics*, 286 Ark. 261, 691 S.W.2d 162 (1985); *Bittle* v. *Smith*, 254 Ark. 123, 591 S.W.2d 815 (1973); *Skillern* v. *Baker*, 82 Ark. 86, 100 S.W. 764 (1907).

Even if the plaintiff's proof is taken at face value, it would be difficult to say that the existence of a binding agreement not to change the wills was shown by evidence that was clear and convincing beyond a reasonable doubt. *Jensen* v. *Housley, Administrator*, 207 Ark. 742, 182 S.W.2d 758 (1944); *Walk* v. *Barrett*, 177 Ark. 265, 6 S.W.2d 310 (1928).

Since we cannot say the chancellor clearly erred, the decree is affirmed.