

Cite as 2017 Ark. App. 378

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV–16–563

|  |  |
|---|---|
| CASSAUNDRA HOLMES, INDIVIDUALLY, AND AS TRUSTEE OF THE BETTY L. POTTER REVOCABLE TRUST ESTABLISHED SEPTEMBER 10, 2004, AND THOMAS WRIGHT AND KEVIN WRIGHT<br><br>APPELLANTS<br><br>V.<br><br>FREDRICK R. POTTER, INDIVIDUALLY, AND AS TRUSTEE OF THE FRED R. POTTER REVOCABLE TRUST ESTABLISHED SEPTEMBER 10, 2004, AND AS TRUSTEE OF THE FRED POTTER REVOCABLE TRUST ESTABLISHED JULY 10, 2013<br><br>APPELLEE | **Opinion Delivered:** June 7, 2017<br><br>APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. 64CV-13-54]<br><br>HONORABLE DAVID H. MCCORMICK, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

This appeal arises from a dispute concerning an alleged agreement between spouses to execute mutual, reciprocal trusts. The circuit court found that there was no contract between the spouses, and that the surviving settlor could revoke his earlier trust and transfer all the assets from that trust to a new trust without it being a conversion or a breach of his fiduciary duties. Three beneficiaries under the original trusts filed two separate appeals, arguing the same four points challenging the court's finding that there was no breach of fiduciary duty and refusing to reinstate the original trust. We affirm.



*Facts and Procedural History*

In 2004, Fred and Betty Potter signed reciprocal, mirror-image trusts providing that four members of Betty's family and one member of Fred's would receive the residuary principal assets from both trusts.[1] Each settlor was to be the trustee of his or her trust during his or her lifetime and, upon the death or incapacity of the settlor, appellant Cassaundra Holmes would become successor trustee. Attached to each trust instrument was a schedule of assets for each settlor setting out the certificates of deposit, real property, and other property being transferred into their respective trusts. Fred's schedule of assets included 1,600 troy ounces of silver, valued at between $10,000 and $15,000. They later signed mirror-image amendments to their trusts that are not pertinent to this appeal.

Betty died in January 2013, and Holmes became successor trustee of Betty's Trust. Appellee Fred Potter filed a complaint seeking Holmes's removal as trustee on September 20, 2013. He asserted that Holmes was not paying him the income from the trust. He further alleged that Holmes had breached her fiduciary duties by self-dealing and unnecessarily causing Betty's Trust to pay fees and to lose $300,000 in her first year as trustee. Holmes answered the complaint, denying the material allegations and pleading affirmative defenses. She later amended her answer. She also sought certain injunctive relief against Fred.

On April 4, 2014, Holmes filed a motion for partial summary judgment as to Fred's claims that she had breached her fiduciary duties. The motion listed thirteen specific factual statements from Fred's complaint for the court to address.

---

[1]The five beneficiaries of the trusts include appellants Cassaundra Holmes, Thomas Wright, and Kevin Wright. Vernon Wright and Allen Potter are the other two beneficiaries; however, they are not parties to this appeal.

SLIP OPINION

On April 23, 2014, Holmes filed a counterclaim against Fred, individually and as trustee of the Fred R. Potter Revocable Trust (Fred's 2004 Trust). She contended that after Betty's death, Fred attempted to get her, as trustee, to sell him assets from Betty's Trust at below market value; that Fred amended his own trust, despite the parties' alleged agreement as to reciprocal trusts, and created a new trust (Fred's New Trust or Fred's 2013 Trust) to remove Betty's family members as beneficiaries under his trust and then transferred the assets from Fred's 2004 Trust to Fred's 2013 Trust without valuable consideration. She contended that this transfer was a conversion, and requested specific performance of the original Fred's 2004 Trust, for Fred to make a full accounting, and that she be awarded her attorney's fees and costs in enforcing Fred and Betty's agreement. In addition, she asserted claims for breach of fiduciary duty, breach of contract, and conversion of a beneficiary's share, and sought actual damages in excess of $300,000. Fred answered, denying the material allegations.

Intervenors Kevin Wright and Thomas Wright filed a third-party complaint against Fred, individually and as trustee of Fred's 2004 Trust on July 28, 2014, for specific performance of Fred's 2004 Trust, for a declaration that Fred's New Trust is invalid, and damages of $300,000 for breach of fiduciary duty, breach of contract, and conversion. The Wrights were granted intervention by an order entered on August 21, 2014. Fred responded to the third-party complaint, again denying the material allegations.

On January 20, 2015, the court entered an order granting Holmes's motion for partial summary judgment as to certain allegations from Fred's complaint. Among the many allegations of Fred's complaint, the court found that there was no evidence that Holmes had

breached her fiduciary duties or was self-dealing, or that Betty's Trust had suffered a loss of approximately $300,000.

Also on January 20, 2015, Fred filed an amended complaint for Holmes's removal. Holmes and the Wrights responded with a motion to strike the amended complaint. The motions to strike argued that the amended complaint was in violation of the court's scheduling order and that the court had granted partial summary judgment on Fred's original complaint. Fred replied to the responses.

On September 8, 2015, Fred filed a motion seeking to nonsuit his complaint. The motion was granted the next day.[2]

The case proceeded to a bench trial on September 9, 2015. At the conclusion, the court took the matter under advisement. On March 1, 2016, the circuit court entered its order deciding the case. The court found that there was no contractual agreement that prevented Fred from amending his trust, and that the amendments made in the September 2013 Fred's New Trust were valid and denied appellants' requests to set aside those amendments. The court also found that there was no agreement between Fred and Betty to make their trusts irrevocable. The court found that the transfer of assets from Fred's 2004 Trust to Fred's New Trust was neither a breach of fiduciary duty nor a conversion of assets belonging to Betty's Trust. Based on its finding that there was no contract between Fred and Betty, the court also ruled that Holmes and the Wrights lacked standing to pursue a breach-of-contract claim against Fred. Likewise, the court ruled that appellants also lacked

---

[2]The circuit court had already struck Fred's amended complaint for being filed in violation of the court's scheduling order.

standing to pursue a breach-of-fiduciary-duty claim. The court denied the relief sought in the counterclaim. The court also issued a declaratory judgment as to the issues covered in the partial summary judgment in favor of Holmes.

These appeals followed.

*Standard of Review*

The exclusive jurisdiction in cases involving trusts, and the construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity, and courts of equity have inherent and exclusive jurisdiction of all kinds of trusts and trustees.[3] Arkansas appellate courts have traditionally reviewed matters that sounded in equity de novo on the record with respect to factual and legal questions.[4] We have stated repeatedly that we will not reverse a finding by a circuit court in an equity case unless it was clearly erroneous.[5] We have also stated that a finding of fact by a circuit court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed.[6]

---

[3]*In re Ruby G. Owen Trust*, 2012 Ark. App. 381, 418 S.W.3d 421.

[4]*Id.*

[5]*Id.*

[6]*Id.*

*Arguments on Appeal*

Holmes and the Wrights first argue that the circuit court clearly erred in failing to find that Fred breached his agreement with Betty to make irrevocable reciprocal trusts and in failing to order Fred's 2004 Trust reinstated. The court found that there was no contractual agreement between Fred and Betty not to revoke their trusts.

Where a party asserts that the wills (or trusts) are reciprocal and irrevocable, it is important to distinguish the law of wills and the law of contracts.[7] A significant distinction between the two areas of law is that wills, unlike contracts, generally are unilaterally revocable and modifiable.[8] A will does not become irrevocable or unalterable simply because it is drafted to "mirror" another testator's will.[9]

When determining whether reciprocal wills and trusts were created, the cardinal rule is to ascertain the intent of the settlor.[10] A court must examine the four corners of the instrument, considering its language and if possible to give meaning to all of its provisions.[11] In construing a trust, we apply the same rules applicable to the construction of wills.[12]

---

[7] *See Allen v. First Nat'l Bank*, 230 Ark. 201, 211–12, 321 S.W.2d 750, 755–56 (1959) (quoting Bertal M. Sparks, *Contracts to Make Wills* 112–13 (1956)).

[8] *See id.*

[9] *See id.*

[10] *Bailey v. Delta Tr. & Bank*, 359 Ark. 424, 432, 198 S.W.3d 506, 512–13 (2004).

[11] *Id.*

[12] *Id.*

It is well established that the fact that the parties have contemporaneously executed separate wills, reciprocal in terms, is not sufficient, in and of itself, to establish a binding contract to make such wills.[13] When there is an allegation of a contract to make a will, the standard requiring clear, cogent, and convincing evidence has consistently been applied.[14]

Holmes and the Wrights rely on the supreme court's decision in *Gregory v. Estate of Gregory*[15] to argue that Fred was without power to modify Fred's 2004 Trust after Betty's death. Such reliance is misplaced because, in *Gregory*, there was no question whether there was a contract to make reciprocal wills, while here, we are at the threshold issue of whether there was even an agreement to make reciprocal trusts. They also rely on *Iwerson v. Dushek*[16] and *Janes*[17] to argue that a contract to make reciprocal wills or trusts may be shown by all of the circumstances. However, the execution of reciprocal wills is now governed by a statute that requires contracts to make or not to revoke a will be proven by a writing or an express reference within the will.[18] The statute further provides that the execution of a reciprocal

---

[13]*Avance v. Richards*, 331 Ark. 32, 959 S.W.2d 396 (1998); *Mabry v. McAfee*, 301 Ark. 268, 783 S.W.2d 356 (1990); *Barksdale v. Carr*, 235 Ark. 578, 361 S.W.2d 550 (1962); *Allen*, *supra*; *Janes v. Rogers*, 224 Ark. 116, 271 S.W.2d 930 (1954).

[14]*Avance*, *supra*.

[15]315 Ark. 187, 866 S.W.2d 379 (1993).

[16]260 Ark. 771, 543 S.W.2d 942 (1976).

[17]*Supra*.

[18]Ark. Code Ann. § 28-24-101(b) (Repl. 2012).

or mutual will does not create a presumption of a contract to make a will or not to revoke the will.

While the terms of the trusts executed by Fred and Betty were virtually identical, there is no writing evidencing a contract not to revoke the trusts. Instead, the trusts clearly indicate a contrary intent of the settlors: Both Betty and Fred reserved the right to amend, modify, or revoke the trusts in whole or part at any time. Under these circumstances, we cannot conclude that Betty and Fred executed irrevocable trusts.[19]

Finally under this point, appellants argue they presented sufficient testimony showing that Fred and Betty had an agreement to make reciprocal, irrevocable trusts. We disagree. They presented their own testimony, along with that of Holmes's husband, purporting to show that Betty and Fred had discussed their trusts in the presence of family members and agreed that neither would change his or her trust. Under Arkansas law, this proof is insufficient to establish an agreement not to revoke.[20] The appellant in *Mabry* contended that testimony that the testator and her husband had intended for the children to be treated equally in the will was sufficient for meeting the burden of proving the existence of an agreement not to revoke the wills. The supreme court first noted that the witnesses called on the appellant's behalf were all related to her by blood or by marriage and that "their testimony did not have that degree of disinterest which would render it obligatory on the fact finder."[21] The court continued that, even if the appellants' proof was taken at face value,

---

[19] *See Cason v. Lambert*, 2015 Ark. App. 41, 454 S.W.3d 250.

[20] *Mabry, supra.*

[21] *Id.* at 271, 783 S.W.2d at 358.

it was still insufficient to meet her burden of proof.[22] Similar to *Mabry*, the only evidence in the present case supporting appellants' contention that Fred executed an irrevocable trust are the identical trusts and the testimony from interested parties stating Betty's and Fred's intent. That is not enough to require reversal.

For their second point, appellants argue that the circuit court's refusal to reinstate Fred's 2004 Trust was clearly against the preponderance of the evidence and that the court should have set aside Fred's 2013 Trust under the theories of detrimental reliance, fraud, or promissory estoppel. To prove promissory estoppel, a plaintiff must show that (1) the defendant made a promise; (2) the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise; (3) the plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and (4) injustice can be avoided only by enforcement of the promise.[23] Detrimental reliance is an equitable principle that may be presented as an alternative to a breach-of-contract claim.[24] Our supreme court has held that the party asserting estoppel must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment.[25] Further, the party asserting estoppel must prove

---

[22]*Id.*

[23]*See, e.g.*, *Anderson's Taekwondo Ctr. Camp Positive, Inc. v. Landers Auto Grp. No. 1, Inc.*, 2015 Ark. 268.

[24]*See id.*

[25]*See K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 280 S.W.3d 1 (2008).

that in good faith he relied on some act or failure to act by the other party and, in reliance on that act, suffered some detriment.[26] Whether there was actual reliance and whether it was reasonable is a question for the trier of fact.[27]

Here, the circuit court found that there was no such promise or agreement between Betty and Fred that they would not revoke their respective trusts. Appellants presented testimony asserting that there was an agreement between Fred and Betty; Fred denied that there was such an agreement. Where the pivotal issue is the credibility of interested parties whose testimony is in direct conflict, we defer to the circuit judge's determination.[28] This is because the fact-finder's choice between two permissible views of the evidence cannot be clearly erroneous.[29]

For their third point, appellants contend that the circuit court clearly erred in finding that Fred did not breach his fiduciary duties by transferring the assets from Fred's 2004 Trust to Fred's 2013 Trust and in finding that they lacked standing to challenge those actions. This point is based on the premise that Fred and Betty had an enforceable contract to make reciprocal trusts and to not revoke those trusts. As discussed under the first point, there was no such contract. Moreover, Fred, who was both settlor and trustee, had expressly reserved the right to revoke or amend Fred's 2004 Trust. Under these circumstances, appellants lack

---

[26]*Id.*

[27]*Id.*

[28]*Midfirst Bank v. Sumpter*, 2016 Ark. App. 552, 508 S.W.3d 69.

[29]*Id.*; *Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark. App. 141, 265 S.W.3d 151 (2007).

standing to challenge Fred's actions because they did not have vested interests in the trust. They only had contingent remainder interests that could be eliminated by Fred as the settlor because the terms of the trust gave him free rein to do as he pleased with the trust estate.[30] Fred's fiduciary duties as trustee of Fred's 2004 Trust were owed exclusively to Fred in his capacity as settlor.[31]

Finally, appellants argue that the circuit court erred in not finding that Fred illegally converted personal property owned by Betty's Trust. The circuit court ruled that Fred's 2013 Trust and Betty's Trust were the co-owners of the assets in question. Because the two trusts were the co-owners of the assets, both had the right to use and possess those assets. The court further found that there was insufficient evidence of conversion of any assets by Fred.

Appellants do not challenge the circuit court's alternate finding that there was insufficient evidence of any acts of conversion. Instead, they argue that Fred had conveyed personal property into Betty's Trust and that the circuit court's finding of co-ownership was wrong. When a circuit court bases its decision on more than one independent ground, and

---

[30] *See, e.g.*, *In Re Estate of Giraldin*, 290 P.3d 199 (Cal. 2012); *Brundage v. Bank of Am.*, 996 So.2d 877 (Fla. Dist. Ct. App. 2008); *Fulp v. Gilliland*, 998 N.E.2d 204 (Ind. 2013); *In re Malasky*, 736 N.Y.S.2d 151 (N.Y. App. Div. 2002); *Moon v. Lesikar*, 230 S.W.3d 800 (Tex. App. 2007).

[31] *See* Ark. Code Ann. § 28-73-603(a), which provides as follows:

(a) While a trust is revocable and the settlor has capacity to revoke the trust, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor.

SLIP OPINION

the appellant challenges fewer than all those grounds on appeal, we will affirm without addressing any of the grounds.[32]

Affirmed.

HARRISON and VAUGHT, JJ., agree.

*Skinner Law Firm, P.A.*, by: *Jack Skinner*, for appellant Cassaundra Holmes.

*Michael Hamby, P.A.*, by: *Michael Hamby*, for appellants Thomas Wright and Kevin Wright.

*Kevin L. Hickey*, for appellee.

---

[32]*Coleman v. Regions Bank*, 364 Ark. 59, 216 S.W.3d 569 (2005); *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989).