J. F. BEASLEY LUMBER COMPANY *v*. SPARKS.

Opinion delivered November 2, 1925.

1. EVIDENCE—HEARSAY.—In an action where one of the issues was as to what it would cost the defendant to complete a certain building, it was not competent for her to state what another person had told her as to the probable cost.

2. PARTNERSHIP—AUTHORITY OF PARTNER TO MAKE CONTRACT.— Where a partnership was formed solely for the purpose of selling lumber and other building material, it was not within the apparent scope of the authority of one of the partners, without

the consent of the other, to enter into a contract for the construction of a building.

Appeal from Union Circuit Court; *L. S. Britt,* Judge; reversed.

*Powell, Smead & Knox,* for appellant.

McCULLOCH, C. J.   J. F. Beasley and the appellant, R. A. Simpson, were copartners, formerly doing business under the name of J. F. Beasley Lumber Company, and they instituted this action in the circuit court of Union County against appellee, Mrs. M. M. Sparks, to recover the sum of $2,129.77 for lumber and other building material, alleged to have been sold and delivered, and to enforce a lien on a building and the lease hold upon which the building was situated.   Appellee answered denying that she was indebted to the copartnership in any sum, and she filed a cross-complaint against the copartners for damages for breach of an alleged contract on the part of the copartners to construct a certain building for her.   Appellee alleged in her complaint that J. F. Beasley, acting for the copartnership, entered into a verbal contract with her whereby the copartnership undertook to furnish the material and erect a building in the city of El Dorado for the sum and price of $6,500, the building to be erected on a lot previously leased by appellee, and to be used in the operation of a hotel.   It was alleged that appellee paid to the copartnership the sum of $3,500 on the price, but that the latter had failed and refused to complete the building, and that she suffered damages thereby in the total sum of $16,700.

On the trial of the cause, the court excluded from the consideration of the jury all elements of damage except for the cost of the completion of the building. The jury returned a verdict in favor of appellee and assessed her damages at the sum of $4,000.

Appellant R. A. Simpson filed a separate answer to appellee's cross-complaint denying that the copartnership had entered into any contract with appellee, and also denied that J. F. Beasley had any authority to enter into

such a contract on behalf of the copartnership. He alone has appealed from the judgment in appellee's favor.

It appears from the testimony that Beasley and appellant Simpson were engaged in operating a lumber yard in Hot Springs, Arkansas, for the sale of lumber and other building material, and that early in the spring of the year 1921 they opened up a lumber yard at El Dorado; Beasley being placed in charge of the business. Simpson resided at Hot Springs, and did not participate actively in the management of the copartnership business.

Appellee testified that she went to El Dorado from some point in Texas in April or May, 1921, for the purpose of engaging in the hotel business; that she met Beasley there, with whom she had been acquainted for a considerable length of time, and that Beasley then entered into a contract with her on behalf of the J. F. Beasley Lumber Company to construct a frame, three-story building for her at the price of actual cost of labor and material, plus ten per cent. for supervision, all not to exceed the sum of $6,500. There is a little uncertainty in her testimony as to the specific terms of the contract, but we are of the opinion that the jury had a right to construe her testimony to mean that the building was to be constructed at actual cost, plus ten per cent., not to exceed $6,500. Appellee was corroborated by her son, who testified that he was present and heard the conversation between his mother and Beasley. Beasley did not testify in the case.

Appellee testified that she gave to Beasley from time to time three checks, payable to the J. F. Beasley Lumber Company, and aggregating $3,500, and that the last check was cashed by Simpson in Hot Springs on June 18. She testified that work on the building came to a stop, and on July 6, 1921, she heard that the firm of J. F. Beasley Lumber Company was in financial difficulties, that there had been a falling out between the copartners, and that a receivership had been applied for. She testified that she went to see Simpson and discussed the matter with him

of completing the building, and that he discussed the matter with her at some length, proposing to complete the building if she would pay for the lumber, material and labor, but that he finally declined to complete the building.

Simpson testified that the copartnership was engaged solely in the business of selling building material, and not in constructing houses, and that Beasley had no authority to contract in the name of the copartnership for the construction of the building.

It is first contended that the court erred in permitting appellee to testify concerning statements made to her by a certain building contractor as to the estimated cost of completing the building. She was permitted to testify, over objections of appellant, that a Mr. Finn had figured up for her the cost of completing the building and informed her that it would amount to the sum of $4,600. This testimony was purely hearsay, and we are of the opinion that the court erred in admitting it. If appellee had completed the building, she could have testified as to its cost, but, since she did not have it completed and it became necessary to estimate the cost, it was not admissible for her to state what another person had told her as to the probable cost. Finn himself could have testified as to the cost of the building, but his statement could not be brought before the jury in the form of hearsay testimony. This error was material because it appears to have been the only testimony as to what it would cost to complete the building, and it afforded the only basis for fixing the amount of damages.

We are also of the opinion that the court erred in submitting to the jury the question of appellant's liability on the ground that there was no authority nor apparent authority on the part of Beasley to execute such a contract on behalf of the copartnership. The court erred in refusing, for that reason, to give appellant's peremptory instruction and in giving to the jury appellee's instruction No. 2 submitting the question whether Simp-

son "held himself out, or knowingly permitted himself to be held out, as a partner of J. F. Beasley in the contract with the defendant for the erection of the building." There is no claim on the part of appellee that Simpson actually authorized Beasley to enter into the contract, or that he was aware of the fact that Beasley was doing so in the name of the copartnership. Nor is there any evidence that that kind of a contract had ever before been executed by the copartnership or any member thereof. The undisputed evidence is that the copartnership was engaged solely in the business of selling lumber and other building material. It was therefore not within the apparent scope of the authority of either of the copartners, without the consent of the other, to enter into a contract for the construction of the building. The only circumstances introduced as tending to show that Simpson was apprised of the fact that such a contract existed was the proof that he cashed the last check given by appellee for $1,000 payable to the J. F. Beasley Lumber Company. There is nothing to show that Simpson at that time was apprised of the fact that this check had been given as part payment under a contract for the construction of the building. Material was being furnished for the building, and, as that was within the scope of the regular business of the copartnership, Simpson had the right to assume that the payment was made on the account for material sold. Certainly there was no testimony in the case tending to show that Simpson permitted himself to be held out as a partner with Beasley in the contract.

Reversed and remanded for a new trial.