Jack AVANCE, Jr., Robert Shelby, and Carmon Wigley *v.*
Virginia R. RICHARDS

97-134                                                       959 S.W.2d 396

Supreme Court of Arkansas
Opinion delivered January 15, 1998

*Lawrence W. Fitting, P.A.*, for appellants.

*Bagby Law Firm, P.A.*, by: *Philip Bagby*, for appellee.

DAVID NEWBERN, Justice. Smith and Etta Jordan, husband and wife, each wrote a holographic will on July 8, 1976. The documents contained common provisions leaving property to the survivor. Ms. Jordan survived Mr. Jordan. In 1990, Ms. Jordan placed money in a joint checking account with right of survivorship. The other person named as depositor was appellee Virginia Richards. At the time of Ms. Jordan's death in 1995, the account contained approximately $121,700. Ms. Richards, who served as executrix of a later will executed by Ms. Jordan, removed the money from the account after being advised by an attorney that the money was hers.

The question we must answer is whether there was a contract between the Jordans that was breached when Ms. Jordan effectively removed money from her estate, after Mr. Jordan's death, by establishing the survivorship account. The Chancellor held that Ark. Code Ann. § 23-32-1005 (Repl. 1994) conclusively placed ownership of the money in Ms. Richards as the surviving person on the account. We affirm the result reached by the Chancellor but for the reason that there was insufficient evidence of a contract binding Ms. Jordan to leave the money in question to Mr. Jordan's beneficiaries in accordance with her 1976 will.

Mr. Jordan's will contained this provision:

> I do hereby give, devise and bequeath all my estate and property which I may own at my death real personal and mixed and wheresoever situated of every kind sort and description to my wife Etta Jordan. She may dispose of the personal property at her decision but the real estate cannot be sold, bartered or disposed of in any manner without the signature of my heirs namely – Hester Avance Junior Avance Carmen Wigley, Robert Shelby and Donald Sanders and they get their share of the property (50%) at the time of transaction to be divided as other monies and property which will be described in paragraph marked (Fourth). The other half (50%) will go to my wife if living and to her heirs if she predecease me.

The document written by Ms. Jordan contained a provision that was virtually the same as Mr. Jordan's but making him the

beneficiary and providing for distribution of her fifty percent to her sister and nieces and nephews. This provision also appeared in Ms. Jordan's document: "At his (Smith's) death it is my wish that all of our estate be divided—50% of our estate, property and monies will go to my heirs and 50% will go to my husband's (Smith Jordan's) heirs." The 1976 document signed by Ms. Jordan also provided that if Mr. Jordan survived her he could dispose of personal property "at his own decision."

On January 26, 1984, Ms. Jordan executed a second typewritten will that purported to revoke all prior wills. The 1984 will incorporated the "50-50" disposition featured in the Jordans' 1976 wills:

> I further recognize that it has been the desire of my deceased husband and myself that at the death of the survivor of the two of us, that the Estate of the survivor should be divided one-half to his side of the family and one-half to my side of the family. In the past we have both had Wills to this effect. It is my desire that in this now my last Will, these intentions be carried out.

Attorney Zed Gant prepared Ms. Jordan's 1984 will and retained the original 1976 documents in his file. The estate of Ms. Jordan, not including the money from the joint account that passed to Ms. Richards as the surviving party to the account, was valued in documents submitted in connection with Ms. Jordan's 1984 will at $308,511.19. That remaining property presumably was distributed among Mr. and Ms. Jordan's beneficiaries in accordance with the 1984 will.

None of these wills, or any other documents executed by the Jordans, expressly referred to a "contract" not to revoke a will.

On July 13, 1990, Ms. Jordan changed the status of the checking account she had opened at the Bank of Mulberry on March 12, 1981. Ms. Jordan added Ms. Richards's name to the account and changed it from an "individual" account to a joint account "with survivorship." Both Ms. Jordan and Ms. Richards signed the signature card. The account agreement explained that the funds would pass to the survivor upon the death of the other party.

Ms. Richards contributed no funds to the account and conceded in a deposition that Ms. Jordan added her name to the account so that she would be able to pay Ms. Jordan's expenses. She was unaware of her right of survivorship in the account until after Ms. Jordan's death.

Ms. Jordan, who had been living with Ms. Richards, died on November 6, 1995. Ms. Richards petitioned the Probate Court for probate of the 1984 will on November 28, 1995. She filed an inventory on March 15, 1996, and did not list the $121,700 in the checking account. As Ms. Richards indicated in her deposition, Paul Gant, an attorney for Ms. Jordan's estate (who also is the son of Zed Gant, the attorney who prepared Ms. Jordan's 1984 will), advised Ms. Richards that the funds passed directly to her and were not part of Ms. Jordan's estate.

In their action against Ms. Richards, Mr. Jordan's heirs claimed that Etta Jordan breached her agreement with Smith Jordan not to revoke her will and that they were entitled to specific performance of the agreement and thus to have the constructive trust imposed. They sought an order directing Ms. Richards to transfer the money and any proceeds from it into the Trial Court's registry and ultimately to Ms. Jordan's estate for distribution in accordance with the 1976 or 1984 will of Ms. Jordan.

Ms. Richards moved for summary judgment and asserted (1) her right to the funds from the account on the basis of § 23-32-1005 regardless of any contract embodied in the 1976 wills; and (2) alternatively, there was no valid contract in the first instance that limited Ms. Jordan's ability to dispose of some of her property by placing it in a joint and survivor account with Ms. Richards.

Mr. Jordan's heirs responded with their own motion for summary judgment and asserted that the 1976 wills implicitly created the contract not to revoke. They also relied on Ms. Jordan's 1984 will and affidavits of persons who said they had heard statements by Mr. and Ms. Jordan concerning their plan to divide their property equally between the two sets of heirs.

The affidavit of Robert Shelby, Mr. Jordan's nephew, was to the effect that he had a serious conversation with Mr. Jordan

shortly before Mr. Jordan's death in which Mr. Jordan expressed his wish that, at Ms. Jordan's death, their property be divided on the 50-50 basis expressed in his will. Mr. Jordan abjured Mr. Shelby to see to it that it went as he wished. Apparently nothing was said about a contract.

The affidavit of Edwina Brooks, wife of a nephew of Ms. Jordan, stated that Ms. Jordan had told her about the 50-50 distribution plan and that she and Mr. Jordan had agreed "by their wills" that half their estate would go to his side of the family and that half would go to her side of the family. An affidavit by Roberta Benham, a niece of Ms. Jordan, reported that Ms. Jordan had told her that she and her deceased husband were "a company" and that everyone would share and share alike.

The Chancellor granted Ms. Richards's motion for summary judgment relying on § 23-32-1005 and this Court's holdings in *Nichols v. Wray,* 325 Ark. 326, 925 S.W.2d 785 (1996), and *Hall v. Superior Federal Bank,* 303 Ark. 125, 794 S.W.2d 611 (1990). He stated he was precluded from considering the arguments that the Jordans had entered into a contract not to revoke their wills and that Ms. Jordan's possible intent that Ms. Richards inherit the money in the checking account was irrelevant. The Chancellor found there was no genuine issue of material fact "that the money which was in the account on the date [of] Decedent's death became the property of Respondent [Ms. Richards] as the joint tenant by operation of law. Accordingly, Respondent's Motion for Summary Judgment is granted."

In the *Hall* case, we held that § 23-32-1005 made the creation of a joint bank account with right of survivorship "conclusive evidence" of the parties' intent that the account was to pass to the survivor upon the death of the other and that it was error for the Chancellor to have considered other evidence of the decedent's intent.

In the *Nichols* case, we reaffirmed the *Hall* decision and held that the statute was controlling of the distribution of the joint account with right of survivorship. There, the decedent had declared her intent in her will to dispose of her estate equally among her three daughters. Only one of the daughters' names

had been placed on several joint accounts with right of survivorship. We held that the statute made the establishment of the joint account with right of survivorship conclusive of the deceased depositor's intent. While the case involved a conflict between the terms of a will and the terms of the statute, neither it nor the *Hall* decision involved a contract not to revoke.

The entire argument of Mr. Jordan's heirs rests upon their contention that there was a contract not to revoke that has been breached by Etta Jordan. The Chancellor by-passed the issue of whether there was such a contract and, in effect, held that it did not matter in view of the statute and our interpretation of it. We are unwilling, based on the facts before us, to hold that § 23-32-1005 precludes the establishment of a constructive trust when a contract not to revoke a will has been properly established and the property in question has been transferred in violation of such a contract. Again, the question here is whether the existence of such a contract has been proven. Both parties, during oral argument, made it clear that we should decide the issue on its merits.

■ We review chancery decisions *de novo*, and when the record is sufficiently developed to enable us to do so, we decide the issues presented without remand. *Cochran v. Cochran*, 309 Ark. 604, 832 S.W.2d 252 (1992); *Lynch v. Brunner*, 294 Ark. 515, 745 S.W.2d 115 (1988). In addition to Ms. Jordan's 1984 will, we have before us the 1976 documents as well as the affidavits mentioned above. We regard the record as sufficiently developed to hold that Ms. Richards must prevail.

■ ■ A "contract for reciprocal wills need not be expressed in the wills, but may arise by implication from circumstances which make it clear that the parties had such wills in mind and that they both agreed to the terms of the testamentary disposition made therein." *Iverson v. Dushek*, 260 Ark. 771, 774, 543 S.W.2d 942, 944 (1976), *citing Janes v. Rogers*, 224 Ark. 116, 271 S.W.2d 930 (1954). In the case of Mr. Jordan's 1976 will, the "testamentary disposition therein" permitted Ms. Jordan, if she survived him, to do as she pleased with personal property. Later there was the provision for the division of real estate among certain persons "to be divided as other monies and property. . . ." In

the case of Ms. Jordan's 1976 will, there was an inconsistency because she wrote that Mr. Jordan could dispose of personalty at his "own decision" but expressed her wish that "monies" be divided equally between the heirs of each side of the family. While it might be said that the provisions concerning real property were "mutual," there is doubt with respect to personalty such as the money Ms. Jordan placed in the joint account with right of survivorship.

Even if the 1976 documents were construed as attempts to create mutual or reciprocal wills with respect to the money in question, that would not support a conclusion that Ms. Jordan had made a contract not to revoke the provisions in her 1976 will.

Since 1981, we have had a statute in effect providing as follows:

> (b)(1) However, a contract to make a will or devise, or not to revoke a will or devise, or to die intestate, *if executed after June 17, 1981,* can be established only by:
>
> (A) Provisions of a will stating material provisions of the contract; or
>
> (B) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or
>
> (C) A writing signed by the decedent evidencing the contract.
> (2) The execution of a reciprocal or mutual will does not create a presumption of a contract not to revoke a will.

Ark. Code Ann. § 28-24-101 (1987) (emphasis added). While the statute obviously does not apply in this case, it amounts, at least in part (b)(2), to a codification of the prior law that does govern here.

In *Barksdale v. Carr,* 235 Ark. 578, 361 S.W.2d 550 (1962), a husband and wife had made reciprocal wills, each conveying all of his or her estate to the other with a provision for dividing the estate of the survivor equally among six children—three from his former marriage and three from her former marriage. Mr. Carr died, and Ms. Carr then revoked her will and conveyed property to her children contrary to the terms of the will she had revoked. Mr. Carr's children sued Ms. Carr's chil-

dren, claiming that Ms. Carr's will was irrevocable. We held that the evidence was insufficient to support the claim of a contract not to revoke. We declined to consider evidence of statements Mr. Carr had made prior to his death on the ground that "one party to an alleged contract cannot bind the other party by declarations made in the absence of the other party." 235 Ark. at 583, 361 S.W.2d at 553. We noted that the wills said nothing about a contract not to revoke and that the mere fact that the wills had been reciprocal was not enough for us to infer such a contract. We concluded that a party seeking to prove a contract not to revoke a will must do so by "clear, cogent, and convincing evidence." 235 Ark. at 586, 361 S.W.2d at 555. We noted that such a contract is like a contract to make a will. When there is an allegation of a contract to make a will, the standard requiring clear, cogent, and convincing evidence has consistently been applied. *See, e.g., Apple v. Cooper,* 263 Ark. 467, 565 S.W.2d 436 (1978); *Kelley v. Pipkin,* 268 Ark. 1009, 598 S.W.2d 102 (Ark. App. 1980). In the *Barksdale* case, we quoted Justice Millwee's opinion in *Janes v. Rogers, supra,* as follows:

> The fact that the parties have concurrently executed separate wills, reciprocal in terms, is not sufficient, of itself, to show that the parties had entered into a contract to make such wills; but the terms of such wills afford some evidence of the contractual relation and, when read in connection with other evidence which tends to show the execution of the contract, may establish that fact. Page on Wills, Sec. 1710; Annotation on Joint, Mutual and Reciprocal Wills, 169 A.L.R. 9.

*Barksdale v. Carr,* 235 Ark. at 584, 361 S.W.2d at 554.

One of the cases relied upon by Mr. Jordan's heirs in their brief and cited to us in oral argument in response to questions concerning the existence of a contract not to revoke is *Smith v. Estate of Smith,* 293 Ark. 32, 732 S.W.2d 154 (1987). In that case, a joint will consisting of a single document signed by husband and wife contained reciprocal provisions leaving property to the survivor and providing that upon the death of the survivor the property was to be divided equally among children and grandchildren. Ms. Smith died, and Mr. Smith petitioned for a construction of the will. He contended the will imposed no restriction on the sale,

transfer, or other alienation of the property. We held that Mr. Smith could use the property for necessities, support, and maintenance but could not otherwise alienate it.

The difference between the *Smith* case and this one is that the Smiths' will contained no provision permitting disposition of any of the property at his or her "decision." More important, it provided, "We intend that this be a mutual will, which will is executed on July 27, 1985, and pursuant to *an agreement* between us to make mutual wills, each leaving his property to the survivor and each *agreeing* that the survivor leaves his property to the heirs listed. . . ." *Smith v. Estate of Smith*, 293 Ark. at 33, 732 S.W.2d at 155 (emphasis added).

■ The 1976 wills of the Jordans do not contain a contract not to revoke. The "other evidence" is not "clear, cogent, and convincing" of the existence of such a contract. We affirm the Chancellor's refusal to impose a constructive trust.

Affirmed.